Case No. 22-727. Keezio Group LLC joined the CPSC DeVos Petitioner v. Consumer Product Safety Commission. Mr. Godding for the petitioner, Ms. Mundell for the respondent. Good morning, counsel. Good morning, your honors. May it please the court, I'll reserve three minutes for rebuttal. As indicated by the administrative record, CPSC never addressed substantial evidence that subjecting aftermarket mattresses to the same thickness restrictions as OEM mattresses, including the one inch limitation on foam, that caregivers would find the aftermarket mattresses to be just as uncomfortable as the OEM versions and would revert back to using more risky, soft bedding to increase comfort levels. Could we start talking about the interesting 28J letters we got? Yes. Right before argument. In particular, at least I have a question, if the commission were to adopt the ASTM standard, which as I understand it is for original manufacturers, to extend it to aftermarket manufacturers as well, would that be the end of your objection at the end of this case, or do you argue for more than two inches, or are there other aspects? Yes, the amended version adopted that would allow for a two inch max thickness, and there is no limitation on foam. Now, as a practical matter, you can never get to quite two inches of foam, but it would allow manufacturers like my client to increase the foam to the point where perhaps it is going to be more comfortable for the user. So, yes, the answer to your question is that would probably do it for our client. And if they decline to adopt it, as I understand from the statute, then they can just retain their existing rule. So, would this case then go forward, or in the process of them explaining why they're not adopting and retaining the existing rule, they actually do more than retain and actually change or create a enhanced record? I'm just trying to figure out if it's a whole new administrative case, or if just a supplemental briefing would be all that would be required if they don't accept it. It's my understanding on how CPSC has done this in the past. The staff will issue a briefing package to the commission, so it will look like the briefing package that we have in this case. And then, short and short order, CPSC then makes a decision. The decision that the commission makes may be very short. It would be just a page. You would have the briefing package, which would become part of the administrative record. Our position would be that if the original rule is retained, that the administrative record that we're dealing with here today could still be relevant. But the administrative record may be amended or enhanced or whatever you want to say, based on at least that briefing package. Based on what, I'm sorry? The briefing package. Okay. But does that, thinking in administrative law context, does that addition of a whole new record or a partial record then create a whole new case? Or would this case continue? I would say this case continues because if, let's say, they reject the new one, the new ASTM standard for reasons that we don't care about, we still need to have an opportunity to challenge the rule that's still on the books. So the original case would still be live, I think. But the record will have been supplemented. Yeah, that's the way you could look at it. So there may be, may require a new briefing if you were to go for it. Yes. So yes, there would need to be something submitted to the court. And would, normally when there's an existing standard that's been adopted, because they had already adopted the ASTM standard for original manufacturers' mattresses, then they do nothing. And if they do nothing, it becomes part of that original manufacturer rule automatically. Does the same thing apply because the rule before us is an aftermarket manufacturer's rule that I get incorporated one, but I'm trying to figure out how much hopscotching happens under the statute. Is there anything automatic? Say they don't act. They do nothing. Yeah, I understand your question. And tell me if I had it, if I didn't. So 16 CFR 1221.2 incorporates by reference that ASTM standard that was just amended. And F2933-21, which is part of the rule that we're challenging, incorporates by reference F406. So it's a little confusing, but they get there. So even though F406, which was just amended by ASTM, technically it was intended to apply to only original OEM mattresses, it ultimately, because of the way everything's set up, it will apply that. Well, is that true? Because the rule here repeatedly states, obviously before this happened, but repeatedly states that changes to F406, if I have that right, are outside the scope of the aftermarket. And so it seems like they've already said changes there. This is its own world. Yeah. If you were to ask me that question, I was prepared to answer it. I actually disagree with what the program rule says. They're all part of the same ball of wax. But the rule itself, I'm just, yeah. I understand your sort of record argument, but just the legal argument under the statute which prescribes consequences when an adopted standard is modified, how would that happen when a rule is incorporating another standard for a different context? And in doing so, it says changes to that original standard will not affect this rule. Yeah. Again, I disagree with that thought. But the way this works is that F406 has been on the books forever since 2013, I think, because of 16 CFR 12. It just governs mattresses. It doesn't talk about OEMs. It doesn't talk about aftermarket. It just governs mattresses. And so what CPSC and ASTM have done is they've set up a new voluntary standard, F2933, which refers to F406, and F2933 applies specifically to aftermarket mattresses. So they do get there. So it does work. Does that answer your question? Yeah, I'm trying to sort it. Yeah. It could be simpler, but it doesn't seem to be in this case. Yeah, there's a footnote in our brief that kind of walks you through that. Well, let me ask, under the existing rationale for the 1.5 and then the fact that we're now looking at a 2-inch thick mattress, doesn't the rationale also have to be revised to match up to the 2 inches when you go through this process? So, yes, in the amended 406, there doesn't seem to be a, there is no rationale. It doesn't say this is why we're doing it. But as a practical matter, that is why it's our understanding ASTM was looking at this, because they are worried about that perverse incentive. And so now we have, and this is really important, we have no limit on the foam. Because under the standard that we challenge, there's a 1-inch foam limitation. And that applies to both the OEMs and the aftermarket. But with the new rule, a manufacturer can get kind of close to 2 inches of foam, depending on if there's a backboard and other things, but certainly a lot thicker and more comfortable than what we're dealing with here. So what is your suggestion about the posture of the case at this point in time,  So we agree with counsel that, you know, it's only three months. They have 90 days to do this. And it's my understanding they usually get that done. So we're willing to hold the case in the veins to see what happens. That doesn't move our case because our argument was they should have waited for ASTM and not promulgated a rule. And it's our position that the rule that's on the books now is actually more dangerous to infants than the status quo before the rule was adopted. But is there any scenario that waiting the 90 days and holding this in abeyance and going with the 2-inch, that it moves the case at all? Like, do you have any sense of agreement that everything works out, that the case is over, or do you still want us to rule on this? Yeah, what's happened is we are willing to hold this in abeyance to see what CPSC does. I was making the point, maybe I should have stopped, it's just that what has happened so far doesn't change this case. You could move forward with the case. And we would ask that you vacate the rule, the reasons we've stated in our briefs. But because there's such a short period between now and when CPSC makes a decision, we're going to cooperate and hold it in abeyance. To follow up on Judge Child's question, if they adopt, I just want to make certain on this, if CPSC adopts the rule and in doing so makes clear that it also applies to aftermarket mattresses, then your case would be mooted. Judge Child would be lying, but yes, probably. I just had one more factual question because you just referenced it. Because I know when you had the one-and-a-half-inch mattresses, there's the one-inch limit on the foam, and there was discussion in the record about, and I'm not going to have the right word, did you call it backboard or underboard or supporting board that's part of the mattresses? Is that just for original manufacturers or is that also for replacement mattresses? No. So what the rule has written now says is if the original, the OEM, has a backboard, your mattress, your aftermarket mattress that is replacing that one also has to have basically the same backboard. And that's that half-inch between the one-inch foam. You said basically the same. It can be the same or larger, the backboard. It can't be less. It can't be smaller? It cannot be smaller. Okay. And that takes a half-inch? Well, that's where you use that extra half-inch. I'm just trying to understand because you said now there's not a limit on foam. Oh, you're talking about... It would still be, the max now on foam would be one-and-a-half because you need another half-inch for the back. It's going to work a little differently between the one we have now and the new standard. So as the standard exists now, you can have, in theory, up to one-inch of foam. It practically can't, but up to one-inch of foam. The OEM can. And then they have another half-inch because of the 1.5 max. And that is basically, that could be the board. So now... That's part of the mattress itself. And it's part of the mattress itself. Okay. And so the rule is, if I'm making an aftermarket mattress, and my mattress is intended to replace an OEM that has a floorboard, my aftermarket mattress has to have a floorboard that is the same size or larger. Got it. Okay. Yep. If there are no further questions, we're in the government now. Turn it over. Good morning, Your Honors. May it please the Court. Amanda Mundell on behalf of the Commission. I'm happy to address the 28-J letter if the Court has questions on that. We agree with counsel, at least in the posture that the case is in right now. The clock, once the Commission receives formal notice from ASTM of that revised standard, is going to start to run for the Commission to review whether to extend it or not. The standard that includes this two-inch increase or not. And that 90 days is a hard deadline. There's no opportunity for extensions. That's my understanding, Your Honor. They complete that review in 90 days and either let the ASTM know or if the 90 days lapses without them getting back to ASTM, then the rule, the standard would just be incorporated into the code after 180 days. And then so it would be incorporated into the rule for original manufacturers. That's right, Your Honor. Would it, as a matter of law, be incorporated into this rule, which incorporates what says you've got to meet the same standard as original manufacturers, but at the same time says changes to that original manufacturer rule are not relevant to what we're doing here. Yeah, so I think there's two different questions of scope there. We agree under the statute that as this operates, the change to F406, because it is incorporated by reference into the standard issue for aftermarket mattresses in this case, would then be incorporated into the code. The comments in the preamble about what was going on with the ASTM working group on 406 and that being outside the scope of this rulemaking was just to note that the calls to put a pause on this rulemaking for aftermarket mattresses simply because there's a task force for OEM mattresses working to figure out whether to change those requirements are outside the scope in the sense that, you know, we have this whole pool of unregulated aftermarket mattresses. And so figuring out how to regulate those doesn't necessarily require the agency to wait for the F406 OEM mattress group to finish their work. But we agree as a matter of law under the statute, changes to this revised standard, if they're accepted by the commission or if they become part of the code just by operation of law, that will impact the standard at issue in this case. Are you prepared to defend your current rule if the new standard is not adopted? I don't want to prejudge, you know, the additional work that the commission is going to do, but certainly at least based on the record that the commission had at the time of this rulemaking, we do believe that this rule is reasonable. It's not arbitrary or capricious because it incorporated a longstanding standard on the thickness of mattresses that have been demonstrably safe. Now, we recognize that there's some amount of uncertainty out there to determine, you know, what incremental increases in mattress thickness may exacerbate a risk of gap entrapment on the one hand or play into the use of soft bedding on the other. But what we do know is that this 1.5 inch limit is safe. So when it comes time for the commission to make cautious decisions about children and their safety, adopting a standard that we know is safe now is eminently reasonable. And there's really no supporting the record for Kizio's suggestion that this standard is suddenly going to increase the use of soft bedding or increase suffocation related injuries. Again, you know, there's some unknowns there, but we do know that parents and caregivers use soft bedding in a variety of environments. So that's a long problem with more complicated solutions. And this issue with respect to the thickness of aftermarket mattresses is still reasonably tied to that 1.5 inch safe limit. So normally if an agency makes a decision and then there's a development in the record that they then create new record materials on, that would be the end of this case. You know, the existing case on the old record and would be mooted out and people would just have to bring a new challenge altogether to the new agency decision, even if that's adding old record and new record together. Does the Justice Department have a position on whether if the CPSC decides to retain this existing rule that's challenged here but would only do so after having either a new record or a supplemented record based on its analysis of this new ASTM standard? Whether that means regardless, this case is moot. It's going to be moot because the agency now has a new matter under consideration and it will either moot the case because it will do what they want or it will moot this case because it will be a whole new case with a new record. Or do we keep this? I'm sorry, it's long to say this. Or is it just because it's just being retained, is this just sort of a supplemental thing that we would just keep the case here and have supplemental briefing even though it's actually a new agency record? Yeah, you know, Your Honor, I think it's an unusual situation and we don't have a position whether a court ought to dismiss this case as moot and then take it up, I assume if it's not in the petitioner's favor, upon a new challenge on the record or whether this would just get retained by the panel with supplemental briefing. I think the fact that if the agency were to retain the original standard, as a practical matter it's almost as if you would just be reviewing the record with some supplemental record material and supplemental briefing, but we don't have a position on whether the court should do one or the other. Well, it almost has some jurisdictional consequences because if it's upon the advent of this new ASTM standard which no one disputes, whatever decision CPSC makes is going to apply actually to this very same rule, these aftermarket ones, so we'll either make them happy and be moot or it will be a whole new decision, a whole new record that needs to be challenged in its own right. And so that would make this current appeal, the current petition for review moot as well. Yeah, Your Honor, that may well be the case, and I don't know if there's a possibility for the petitioner here to amend the petition for review, to add this additional decision, but I think either way, certainly the case that if the commission were to just adopt the standard, we agree with counsel that probably moots the case, and then if they don't adopt the standard, if the court dismisses it, we certainly wouldn't oppose the court dismissing the case and then having this new petition for review brought to the agency's final decision, which uses that new record plus the existing administrative record that we have here, which we agree is certainly relevant. Normally what happens when agencies supplement decisions is you have to file a second petition for review from that second agency decision. We get this at least in FERC cases all the time. Is it your position or the government's position that they will have to file a new petition for review if they want to challenge if there's an adverse decision in their view from the CPSC? Do they have to file a new petition for review, or can this existing one encompass it? Your Honor, we don't have a position on that. I think just the tricky thing about this is that if the commission just decides to retain the existing standard, it's true that that's final agency action, but it's really no different than enacting a new standard. It's a new record. It's got a different record. That's true, and we do think that supplementing the administrative record with whatever staff briefing package exists would be appropriate there, but we don't have a position on whether the court should require a new petition for review. We certainly wouldn't oppose that, but I do think it's tricky just given, you know, the retaining the same standard. Retaining is a different verb. If the commission does nothing, I gather it's common ground that the change in the standard will apply to aftermarket further notice and comment before they, well, if they want to reject it, will there be further notice and comment before they take that action? Will they propose to do so and then receive comment? You know, Your Honor, I think the agency could do that. Usually how this works, because the 90-day period is so short, I think the agency typically notifies the public of the commission's vote, but I don't know that there's really a mechanism in place that every time something like this happens, there's a limited period of comment, you know, maybe something like 14 days, but the 90-day period is so short that I wouldn't expect there to be, you know, the typical type of notice and comment period you would see in an original rulemaking. Well, the petitioner has raised certain objections to the existing decision based on the claiming a lack of support in the record. And some of those, or at least one might be readily addressed, if the commission were to reopen the record with respect to addressing that and perhaps allowing further comment. There's also a question as to whether one of the petitioner's objections has been forfeited by reason of being raised belatedly. And that could then be cured and raised initially if there were new comments. So I'm wondering whether the case wouldn't be a lot cleaner if this version of it went away and a new version based on a new record were available for the petitioner to challenge if he wants to. Well, I think that's right. I think the development of a staff briefing package assessing whether or not to retain an existing standard or adopt this to which limitation is going to address some of the concerns that petitioners raise here. We don't think based on the existing record, those concerns amount to arbitrary agency action. Well, if it just becomes the standard by, well, okay, I'm sorry. You're saying if it doesn't adopt it, then they will give us a decision, make a reasoned decision? I'm sorry, I didn't see that. The commission would then issue another hopefully reasoned decision as to why it is not adopting the standard. That's right. And that would not be limited to the reasons given for the current. That's correct. And, of course, as you may know, some of the data and the existing administrative record runs to April 2021. So with this now revised standard coming out here at the end of 2022, there's an additional year and a half of incident data potentially available to the commission as well as other modeling or other tests that they can do to assess whether this standard improves safety or not. The whole dispute would be ill served if it comes back on the same record. We agree, Your Honor. So if the commission, let's say the commission rejects the revised standard and issues a staff briefing package explaining why and petitioners here continue to challenge that rejection and the maintenance of the existing standard, then we do agree that we would at least at a minimum want to supplement the administrative record with that new staff briefing package. Is there some limitation on what can go into that new record? I mean, the staff puts together a package, presents it to the commissioners for a vote, and if the commissioners accept that package, is that constrained from adding anything additional to that? I mean, if the package doesn't address the issues that are raised in this case, then we're back where we started. Well, I think whatever, you know, the package will be tailored to the decision to keep or not keep the existing standard, which as a practical matter would probably address most of the issues in this case. But we think that, you know, if the court were to review the agency's decision to retain the existing standard, that decision would necessarily bring in the data and other, you know, record material the agency relied on to develop that rule to begin with in addition to whatever new facts or data or information the agency relied on at the time it issues that staff briefing package. Why is this change happening now? That's a good question, Your Honor. It's a little inconvenient to happen so close to oral argument. But my understanding is that the ASTM working group, along with the commission, has long been trying to assess whether there is a need for safety or whether, you know, the expansion of the thickness of mattresses is appropriate. These things take time, and the fact that it's happened now is more just a dint of that process playing out over time than I think anything else. But, you know, we regret that this happened, you know, circumstantially right before argument. I know that that made it a little bit more challenging. Here's just a follow-up on Judge Ginsburg's question. There's an argument in your brief that going from one-and-a-half to two inches, again, before this ASTM came out, would not be substantially similar or more stringent, more protective than the existing standard. And so it's not something that they could have, in our prior world, have even adopted and considered. There's some question whether that was raised by the agency itself. Is that the type of thing that would be on the plate for this next round, or is it, as you said, just put a yea or nay on whether we want this new standard? Well, I think because, you know, assuming this Court doesn't vacate the rule before the agency makes its 90-day determination, because that's on the books, it's under that framework of whether the increase to two inches improves safety. So I think it is a slightly different inquiry, and so there's less of a question about whether that's making it more stringent and just a question of whether it improves safety. And then I just had one more question. If the agency – because there's three doors here, and one is that the agency does nothing. If the agency does nothing, does the briefing package from staff still become a part of the record, or does it only become a part of the record if the agency makes an affirmative decision one way or the other? You know, Your Honor, I'm actually not aware if a staff briefing package is prepared if the agency does nothing. Perhaps that's the case. But I think as a practical matter, the supporting data and materials become a part of the record when there's an agency decision, final agency action. I think if the agency just sits by and does nothing, there's really not the same affirmative decision where the agency votes to accept or votes to reject the rule. Thank you very much, Your Honor. Who would like to hear from Mr. Gunning? Yes, we'll give you – Mr. Gunning, we'll give you – you said three minutes for rebuttal. All right. Just to go back. So it's my understanding there's no notice in common if they just allow the existing rule to stand. And so we wouldn't have a chance to go through that formal process. My understanding is that all the commission does is issues like a one- or two-page, you know, yes, we're just going to keep the new standard here with the vote. Sometimes the commissioner will make a statement. But there's no preamble. There's nothing for us to look at and say, here was the commission's, not the staff's, the commission's rationale. And so that – in that sense, it is not like a new case. So that's the first point. The second point was – go ahead. Well, is that what happened so far? That's what's happened in recent rulemakings where ASTM has amended a voluntary standard, and then they went through this process. And so the second point I want to reiterate is that – and this is in the record right now – the reason why the commission doesn't like this new rule has nothing to do with the two-inch or the – Wait, wait, wait. How do we know the commission doesn't like this new ASTM standard? Because they said we are not going to wait on ASTM. Well, that's a very different point than saying we don't like something. I think that's – They have indicated that the – that has now been adopted by ASTM. That they don't like the measurement, the way the measurement protocol for measuring the gap between the mattress. This is the so-called methodological dispute? Yeah, it's the protocol. How do you do that? That isn't our case. So if this is truly an up-or-down vote, the commission, and they reject this new rule or the new standard, it may be for reasons completely independent of why we challenged this rule. And so then that means the only way we can continue challenging the rule is on the administrative record that we have now. But what about the staff briefing package? Well, let's say the staff briefing package doesn't address – it just accepts the two inches. It doesn't have a problem with it and recommends to the commission that you should reject this new rule because the measurement protocol isn't working for us. That's not our case. So my client still needs to have an opportunity to come back to this court and argue, assuming on the administrative record that exists now. So it's not – you're asking great questions, but it could be a situation where my client has no option for judicial review. And you said there might not be notice and comment in the ordinary sense, but I assume your client and others in the public who want are free to send in letters. We could, and then the commission would have to – They accept public communication during this time period. And then they would have to decide whether or not it goes into an administrative record. Well, I mean, if you send the communication, it becomes part of, if not the administrative record, part of what you will bring into court. Usually it does. So let me ask you this. Why aren't your interests better served by withdrawing this case, deciding that it's removed, so that there's no doubt that there's later final agency action that you can challenge, and so that an issue that you've raised in what may be a belated and forfeited fashion here, namely the substantially same issue, can be raised before the commission clearly? We could, but I guess I don't know what the commission is going to do. And based on the example I just gave, I would be reluctant to do that. I guess we could resubmit everything. But, again, it's not a typical rulemaking proceeding. There's no preamble. There's no notice of comment. But there's a final agency action. It would be final agency action. And a new record. That's true, yes. I guess, at a minimum, I would ask, if you're going to hold this in advance, is that we be able to brief that issue if they do reject the standard. Which issue? The issue we're discussing, whether or not this administrative record continues or if it's a new case. Well, I guess another way to think about it is, if this is all hypothesizing, if they reject this new standard and have not just methodological but also safety concerns, which was voiced in this case, and have a staff briefing package, do you want to brief a challenge to the CPSC decision in a little supplemental brief, or would you want to have a chance to do a full-fledged briefing and reply brief to tackle everything combined now that you would find that you disagree with in that decision? I guess the way I look at it is, if the CPSC were to address the two-inch and address our issue, which is what we want them to do, and that's the whole point of the lawsuit, it may, as a practical matter, move the current administrative record. I'm saying if they rule again, they don't adopt the standard. Yeah, they don't adopt the standard, but the CPSC has addressed our issues. Let's say they don't adopt the standard. They say we don't like the two-inch max, and they address that, which is the point of our lawsuit. We want them to address all of this evidence that they didn't consider. Then that kind of moots the current administrative record, but I don't think it means this administrative record is now on. So if they say some more things and they get to adopt, if they just say some more things, give a more elaborate explanation that responds line-by-line to your brief, and stick with one-and-a-half inches, your client's done and not going to challenge that next decision? No, we could, but it would probably be on that new briefing. That's what I'm asking, and then would you want to do that in supplemental briefing, which tends to be very short and doesn't include reply briefs? That's what I'm saying is at that point you're going to have both this original record, and maybe some of it will have gone away or not. Maybe some will go away and some won't, and some new ones will come along. If we treat this as this case just continuing, all you get is a little supplemental brief. At that point you're going to have two records to grapple with, and who knows, maybe they'll say all kinds of new stuff that you disagree with as well. Right, right, right. And it's a lot to not do that through normal briefing on a new petition. That's a good point. I did not think about that. It is so difficult for me to sit here because I don't know how this is going to play out. I just don't. And I can't give up on the current administrative record. I can't do that right now. And so I guess I would probably file a motion with the court to ask for extra pages and to brief this issue, which is an interesting issue and it's a good question. Thank you very much for your time. The case is submitted.
judges: Millett, Childs, Ginsburg